UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

```
KENTUCKY FORWARD LLC,         )
                              )
     Plaintiff,               )   Action No. 5:15-CV-6-JMH
                              )
v.                            )
                              )
PAIGE SHUMATE SHORT, et al.,  )   MEMORANDUM OPINION AND ORDER
                              )
     Defendants.              )
                              )
```

**       **       **       **       **

This matter is before the Court on Defendants' Motion to Vacate Judgments and for New Trial, and Alternative Motion to Alter or Amend Judgments or Make Amended or Additional Findings [DE 67]. Plaintiff responded and Defendants replied, and this matter is ripe for review.

**I.   Background**

This litigation arises from a dispute over payment for services rendered by Plaintiff to Defendants. The principals at Kentucky Forward, LLC, Jacob Clabes and Judy Clabes, worked directly with Defendant Short, a principal at Four Tigers, LLC, to develop creative images, packaging, and a marketing plan for Four Tigers' two new blackberry chewing gum products. The underlying facts are set forth with additional specificity in the Court's Order of July 8, 2016 [DE 56] and incorporated herein. In summary,

Defendants never paid Plaintiff for its services and this lawsuit ensued.

The case file shows the extent to which Defendants did not fully cooperate or participate in this lawsuit and the many opportunities Defendants had to raise the issues stated in their motion.  Initially, Four Tigers and Short were represented by counsel, who filed an Answer on behalf of both defendants and a Counterclaim on behalf of Short [DE 15, stricken by DE 45; Counterclaim dismissed at DE 33].  Counsel for defendants also filed a Response to Plaintiff's Partial Motion for Summary Judgment on the Counterclaim [DE 23 and 25] before withdrawing as counsel for both defendants on September 16, 2015.  The Court gave Defendants until October 16, 2015 to obtain new counsel; however, both defendants failed to do so.

In the Court's order dated October 22, 2015 [DE 33], the Court extended the time for defendants to obtain counsel until November 4, 2015.  In that Order the Court warned Four Tigers that while Short could represent herself *pro se* in this matter, Four Tigers is a business association and could not proceed without counsel, and if it did not obtain counsel the Court would direct the Clerk to enter default judgment against it.  On November 9, 2015, Four Tigers had failed to obtain counsel and default judgment was entered against it.  Short continued in this matter *pro se*,

although she did not participate in this litigation again until the filing of the instant motion.

The Court granted Plaintiff's motions for discovery [DE 36, entered November 13, 2015] and to compel answers to Interrogatories and Requests for Production of Documents [DE 38, entered November 17, 2015](which were originally served in July 2015), and gave Short until December 1, 2015, to comply.  As noted, Short ignored these Orders and failed to respond to Plaintiff's February 10, 2016 Motion for Default Judgment [DE 41] and May 12, 2016 Motion for Entry of Default [DE 44].  As a result of these blatant and repeated failures, the Court directed the Clerk to enter default against Defendant Short and set a damages hearing for July 5, 2016, to determine what damages, if any, were appropriate to be entered against either or both defendants.

Prior to the damages hearing, the Court received a letter from Defendant Short's husband, Dan Short, which prompted the Court to issue a subpoena for his appearance at the July 5, 2016 hearing. Defendant Short did not appear at the damages hearing, nor did a representative appear on her behalf or on behalf of Four Tigers. Mr. Short appeared and spoke to the Court regarding Defendant Short's mental state.  Mr. Short told the Court Defendant Short is suffering from a mental defect or incapacity from a gunshot to the

hand in 2009.[1]  Mr. Short is not an attorney or Defendant Short's legal representative, therefore he could not legally represent her interests in Court.  Mr. Short is also not a party to this lawsuit and had no standing to request the Court take any action.  The Court held the damages hearing and ultimately entered a judgment in the amount of $279,466.50 jointly and severally against Defendants.  [DE 56 and 63].

Defendants now argue the Court made the following errors of law in granting default judgment in favor of Plaintiff:

(1)   The Complaint established the value of the *quantum meruit* claim in an amount far less than the sum the Court awarded;

(2)   Defendants had an implied license to use the packaging at issue, and thus, there could be no copyright infringement;

(3)   There is no basis for holding Defendant Short liable for Four Tigers' debt;

(4)   There is no legal or factual basis for the imposition of attorney's fees and costs.

---

[1] In the Court's Order of July 8, 2016 [DE 56], the Court erroneously stated this was a gunshot to the *head*.  Upon review of the record, it is clear Defendant Short suffered an accidental gunshot wound to her *hand*.  This is a critical distinction, as it is obvious that a gunshot to the *hand* is far less likely (though the Court does not exclude the possibility) to cause a mental functioning issue than a gunshot wound to the *head*.

Defendants further argue that their failures in this case did not justify default judgment because they were not "willful," and that Defendant Short is not "culpable" in her failures on her own behalf and as a principal of Four Tigers because of "excusable neglect." [DE 67-1, pp. 9-16].

## II.   Standards of Review

### a. Rule 60(b)(1) and (6)

Under Federal Rule of Civil Procedure 60(b), a district court may relieve a party from a final judgment or order for:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

A Rule 60(b) motion may only be granted for one of the enumerated reasons. *Johnson v. Unknown Dellatifa*, 357 F.3d 536, 543 (6th Cir. 2004); *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998).   Though courts have considerable discretion in granting relief from judgment pursuant to Rule 60(b), a court's power is limited by public policy favoring the finality of judgments, and relief under Rule 60(b)(6) is available only in

"unusual and extreme situations where principles of equity mandate relief." *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001).

### b. Rule 59(e)

Federal Rule of Civil Procedure 59(e) provides that a judgment can be set aside or amended for one of four reasons: (1) to correct a clear error of law; (2) to account for newly discovered evidence; (3) to accommodate an intervening change in the controlling law; or (4) to otherwise prevent manifest injustice. *See also, ACLU of Ky. v. McCreary Cty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010); *Gen Corp, Inc., v. Am. Int'l. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). The grant or denial of a Rule 59(e) motion "is within the informed discretion of the district court." *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 832 (6th Cir. 1999); *see also Leisure Caviar v. U.S. Fish and Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) ("A district court, generally speaking, has considerable discretion in deciding whether to grant [a Rule 59(e)] motion.")

### c. Rule 59(a)

"Federal Civil Rule 59(a)(1)(B) allows a party to move for a new trial following a bench trial 'for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.'" Under Rule 59(a)(2), "the decision to grant a new

trial lies within the sound discretion of the trial court." *Orthofix, Inc. v. Hunter*, 2015 WL 474319, at *2 (N.D. Ohio Feb. 4, 2015)(quoting *EEOC v. JMS USA, LLC*, 2014 WL 298625, at *4 (D. Neb. 2014)).

### d. Rule 52(b)

Federal Rule of Civil Procedure 52(b) often accompanies a Rule 59 motion, allowing a court to "amend its findings—or make additional findings—and [] amend the judgment accordingly" upon the motion of a party made within 28 days of the entry of the judgment. The Court finds that Defendants' arguments as to any amendments they believe should be made to the factual findings of the Court are wholly without merit, as discussed below.

### III. Analysis

At the outset, the Court notes Defendants admit Paige Short was responsible for Four Tigers' participation (or, more accurately, lack thereof) in this lawsuit. [DE 67-1, pg. 9 and DE 70, pg. 1].

Defendant Short's 2009 gunshot wound to the hand is, in large part, the basis for the motion before the Court. Defendants explain that the gunshot injury resulted in numerous surgeries, substantial pain, and required the use of prescription pain medication. Mr. Short and Defendant Short's mother, Kay Shumate, provided affidavits stating that, in their opinion, Defendant Short was "addicted" to prescription pain medication from March

2009 until February 2015.  [DE 67-3 and DE 67-4].  According to these affidavits, it appears Defendant Short's most recent hand surgery was in September 2014, which required physical therapy through January 2015 (incidentally, the month this lawsuit was filed).  Mr. Short and Ms. Shumate opine that based on their observations of Defendant Short, "from at least August 2014 through the present, Paige has not been mentally or physically healthy." [DE 67-3, ¶8 and DE 67-4, ¶8].  Neither Mr. Short nor Ms. Shumate are physicians or mental health experts.  Accordingly, while they may testify to their observations, they may not diagnose Defendant Short with addiction, mental disorder, depression, or any other condition which they believe she suffered.  This is opinion testimony based on "scientific, technical, or other specialized knowledge within the scope of Rule 702" by a lay witness and is specifically disallowed in the evidentiary rules.  Fed. R. Evid. 701(c).

Defendants also support the current motion with the Declaration of William J. Short, M.D., the brother-in-law of Defendant Short.  Dr. Short is a family practitioner in Ashland, Kentucky.  Dr. Short declares he has "consulted" with Defendant Short at some unspecified time, "observed" her, and is "personally aware of" Defendant Short's health circumstances, and has formed the opinion that "she is suffering from a cognitive disorder which has worsened from March 2009 to the present date."  [DE 67-5].

Dr. Short does not claim to have examined Defendant Short, her medical records, or have diagnosed or treated her for any condition.

In fact, Defendants have not submitted any medical records or testimony from her treating physicians that support their claims that Defendant Short has a mental defect that would have prevented her from participating in this lawsuit. It is the trial judge's responsibility to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

> Generally a treating physician can provide expert testimony regarding a patient's illness, the appropriate diagnosis, and the cause of the illness even if the physician is not among the world's foremost authorities on the matters. However, a treating physician's testimony is still subject to the requirements in *Daubert*. Before permitting a physician to testify, the district court must be persuaded that (1) the reasoning or methodology underlying his or her testimony is scientifically valid; and (2) he or she has properly applied that reasoning or methodology to the facts at issue to aid the trier of fact.

*Thomas v. Novartis Pharm. Corp.*, 443 F. App'x 58, 61 (6th Cir. 2011).

Dr. Short does not purport to be Defendant Short's treating physician, but merely an extended family member who has "consulted" with her. Dr. Short's "reasoning or methodology underlying" his opinions as to Defendant Short's "cognitive disorder" were to

"consult with" Defendant Short in a "professional capacity" and
"observe[]" Defendant Short (though he does not specify this was
in a "professional capacity" such as during an exam) and be
"personally aware of" Defendant Short.  Dr. Short admits there has
been no diagnosis of any "cognitive disorder" impairing Defendant
Short (other his "opinion that she is suffering from a cognitive
disorder").  Dr. Short does not claim to have examined, diagnosed,
or treated Defendant Short for any ailment whatsoever.  It appears
that the "reasoning or methodology underlying" his opinion of
Defendant Short's cognitive functioning is his general knowledge
of her as a brother-in-law, which has included, at unspecified
times, discussing her health.

     It is possible that Dr. Short, being a (family practice)
doctor may have discussed Defendant Short's health with her in a
manner that was more medically specific or clinical than Defendant
Short would have discussed with a family member who is not a
doctor. However, Dr. Short does not claim to have reviewed her
medical records.  He does not state he conferred with her treating
doctors.  He does not state she was his patient at any time.  Dr.
Short's vague statement that he "consulted with Paige Short in a
professional capacity concerning her health" is insufficient to
meet the requirements of *Daubert* to support his very specific
"opinion that she is suffering from a cognitive disorder which has
worsened from March 2009 to the present date."  [Aff. Of William

10

Short, DE 67-5, pp. 2-3]. *Thomas* at 61. Thus, pursuant to *Daubert* and its progeny, Dr. Short's affidavit cannot be considered admissible expert testimony on the subject of Defendant Short's mental capacity or ability.

Defendant Short's prior counsel never raised her mental abilities as an issue in this matter. According to the dubious affidavits from Defendant Short's spouse and mother, her mental "dysfunction" has been ongoing "from at least August 2014 through the present." [*See* Aff. of Dan Short, DE 67-3, pg. 2]. As noted above, her brother-in-law stated her "cognitive disorder" started in March 2009. This mental dysfunction or cognitive disorder has been so severe, according to Defendants, as to prevent Defendant Short from participating in this lawsuit on her own behalf or retaining counsel for her LLC. Inexplicably, however, Defendant Short was sufficiently mentally functional to retain counsel in May 2015 to defend this lawsuit on her personal behalf and on behalf of Four Tigers. At no time during this representation, from May 2015 through September 2015, did her counsel raise the issue that Defendant Short was not mentally or physically capable of participating in the lawsuit. Moreover, Defendant Short was capable of retaining counsel in August 2016 to represent her individually and Four Tigers in the filing of the instant motion.[2]

---

[2] Defendants claim that Plaintiff inaccurately assumes "Ms. Short arranged for the employment of counsel to file the pending motion." [DE 70 p. 4]. Yet, Defendants do not provide any alternative explanation for counsel's appearance

The Court is wholly unconvinced that Defendants are entitled to any relief.   Defendants have not presented any credible, admissible evidence of "excusable neglect" or "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b).

Based on the record, it appears Defendant Short was mentally competent during the activities which gave rise to this lawsuit, post-gunshot wound to the hand, from around May 2012 through at least August 2013; it appears she was also mentally competent and assisted in the defense of this lawsuit and filing of a counterclaim with her retained counsel from May 2015 through September 2015 (and perhaps even earlier, as the record suggests Defendant Short may have been purposefully avoiding service of process from January through April 2015).   It further appears Defendant Short has been mentally competent and assisting her second retained counsel from mid-August 2016 through the present, as the Court has not received notification that a legal guardian is representing Defendant Short's interests at this time.

The above list represents only Defendant Short's activities in the record in this lawsuit.  Plaintiff produced several exhibits in response to the instant motion which very strongly suggest Defendant Short has not been suffering from a mental incapacity or

---

in this case.  Although Dan Short represented to the Court at the July 5, 2016 hearing that he intended to obtain "guardianship" over Defendant Short, it appears this did not occur.  The Court can only speculate as to why.

cognitive defect during the pendency of this lawsuit. For example, Defendant Short posted a photograph of herself on Facebook driving a boat with young children onboard just two weeks prior to missing the damages hearing. [DE 69-1]. This is despite the fact her husband and mother provided sworn testimony to this Court that Defendant Short is not mentally well enough to operate a car with her grandchildren in the vehicle. [DE 67-3 ¶8; DE 67-4 ¶8]. Plaintiff provided exhibits showing Defendant Short's involvement with Women Leading Kentucky and that in 2015 she was on the "short list" along with a lawyer, banker, and mayor to fill a vacant state legislative seat.

In sum, the facts in the record do not support Defendants' arguments that Defendant Short suffered from a mental health problem which prevented her—intermittently—from participating in this lawsuit. If Defendant Short has indeed been "dysfunctional" and "even at her best has not functioned normally" from August 2014 through the present, has lost math skills and the ability at times to "recognize people she's known for years," as her family claims [DE 67-3 and 67-4], it seems to the Court highly improbable that such a long-term, severe, and pervasive cognitive issue would be brought to the Court's attention only after judgment was entered against Defendant Short. This seems even more improbable in light of the fact Defendant Short was represented by counsel for a number of months with no mention of such a serious mental impairment.

Accordingly, the Court will deny each of Defendants' requests for relief, as explained below.

### a. Excusable Neglect and Other Reasons Justifying Relief

The parties agree that in determining whether a litigant's conduct suggests Rule 60(b) relief is appropriate, courts must examine three factors: (1) whether the party seeking relief is culpable; (2) whether the party opposing relief will be prejudiced; and (3) whether the party seeking relief has a meritorious claim or defense. See *Lacer v. Pickard*, 2012 U.S. Dist. LEXIS 156588 *3 (W.D. Ky. Nov. 1, 2012). These factors weigh in favor of Plaintiff. The Court has found the evidence of Defendant Short's cognitive problems is wholly not credible, in part inadmissible, and directly in opposition to Defendant Short's past actions in this litigation. The Court has not changed its conclusion that Defendant Short's inaction in this lawsuit is the result of "a willful refusal to participate in this lawsuit and intentional failure to comply with the Court's orders." [DE 45, p. 3]. Defendant Short, individually and as the corporate representative of Four Tigers, is culpable for the inaction which gave rise to the default judgments against both defendants.

As to the second factor, the Court finds Plaintiff will be greatly prejudiced if the Court grants Defendants' Rule 60 motion; Plaintiff has already had to expend time and money to litigate

14

this case against uncooperative and unresponsive Defendants. Plaintiff had to move to compel answers to discovery and hire experts to testify at the damages hearing. This work—and the corresponding expense—would have to be needlessly replicated simply because Defendants chose not to participate the first time. The Court is unwilling to so punish Plaintiff merely because Defendant Short has now recognized the gravity of her prior poor decisions.

Likewise, the third factor does not sway the Court. Defendants had an opportunity to present any claims or defenses they might have prior to entry of the judgment. In fact, Defendants did file an Answer with defenses and Defendant Short also filed counterclaim (which the Court dismissed for lack of jurisdiction). Defendants could have pursued the defenses in the Answer, but in choosing not to, ultimately the Answer was stricken from the record for Defendants' failure to comply with the Court's orders in this case. There is nothing in Defendants' instant motion to suggest any new claims or defenses arose since entry of the judgment.

Accordingly, the Court finds there was no "excusable neglect" which justifies granting relief from the judgment pursuant to Rule 60(b)(1) in this case. The Court further holds that Rule 60(b)(6) relief is appropriate in "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered

clauses of the Rule[,]" and, as no such extraordinary circumstances exist in this case, the Defendants' motion for Rule 60(b)(6) relief will be denied. *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)

### b. There were no clear errors of law

Defendants argue the Court made several clear errors of law which require amended or additional findings pursuant to Rule 52 or an altered or amended judgment pursuant to Rule 59(e), or a new trial pursuant to Rule 59(a). The Court holds Defendants have not presented any facts, evidence, or rules of law to justify such relief.

### i. *Quantum Meruit* claim

Defendants argue the Court's award of $168,000 in quantum meruit damages was a clear error of law because the plaintiff admits in its Complaint that there was a contract between the parties and entered into evidence an invoice for its services for only $51,250, far less than the value of the services it claimed at the damages hearing. Defendants state that the Court should not have found there was no contract between the parties—thus opening the door for a *quantum meruit* claim—when the plaintiff pled breach of contract in its Complaint (thereby admitting existence of a contract, in Defendants' view). The Court notes, however, that Plaintiff also pled *quantum meruit* in its Complaint, and that it is not uncommon for a party to plead related counts in

16

the Complaint out of abundance of caution.   Furthermore, neither
Plaintiff nor Defendants have produced a contract between the
parties.   The Court remains of the opinion that there was no
meeting of the minds with respect to formulating a contract in
this case, but that the circumstances justify an award pursuant to
*quantum meruit*.

Defendants attack the amount of the *quantum meruit* damages,
claiming that the invoice entered into evidence by Plaintiff is a
judicial admission of the maximum amount Defendants owed
Plaintiff.   The invoice for $51,250 and accompanying cover letter
make it clear that Plaintiff was hoping to recoup *some* fees from
Defendants ("The real cost of [these services] would be ten times
what we are charging . . ." [DE 1, Ex. F]); in fact, the letter
can be reasonably viewed as an offer to settle or resolve the
matter without litigation, not as an admission of a damages cap.

### ii.  Copyright infringement

Defendants claim the award for copyright infringement was a
clear legal error because they had an implied license to use the
artwork on the BerryCare Toothpaste Gum and BerryCare Quick Energy
Gum.   The accused copyright infringer bears the burden of proving
that there was an implied license.  *Bourne v. Walt Disney Co.*, 68
F.3d 621, 630-31 (2nd Cir. 1995); *Cf. Melea Ltd. v. Quality Models
Ltd.*, 345 F.Supp.2d 743, 752 (E.D. Mich. 2004)("The accused

infringer bears the burden of proving that the patent owner granted an implied license to the accused infringer.").

Defendants offer a few facts in their motion purportedly proving that an implied license existed and that Plaintiff did not ask Defendants to cease using the copyrighted material. Defendants could have come forth with evidence that there was an implied license at any point during the pendency of this litigation; however, Defendants specifically chose not to do so. As the Court noted above, there is no excuse for Defendants' actions in this case. Defendant now seek a "second bite at the apple" to present evidence which was previously available to them. Defendants have not argued, and the Court sees no evidence of, any newly discovered evidence since the imposition of the judgment which would justify reconsideration or amendment of the judgment. For this reason, Court will not consider any evidence that might be presented in the instant motion on the issue of an implied license. If Defendants wished to present evidence on the defense of an implied license, they should have done so prior to the judgment. There is no evidence in the record to support Defendants' claim an implied license existed; thus, the Court will not alter or amend its judgment or make additional findings.

### iii. Joint and several liability

The Court previously addressed its justification for imposing joint and several liability against Four Tigers and Paige Short on the *quantum meruit* claim:

> Defendant Short is a member of Four Tigers, LLC. Plaintiffs allege Defendant Short requested work on her behalf and on the behalf of Four Tigers, LLC. Plaintiffs introduced evidence at the hearing that in addition to the work on the chewing gum products, Defendant Short requested Plaintiffs create materials for the Shumate Family Foundation. The Court concludes both Defendants benefitted from the services Plaintiff provided.
>
> . . .
>
> The uncontroverted evidence in the record reflects that Defendant Short requested, on behalf of herself and Four Tigers, LLC, various marketing and advertising services to be performed by Plaintiff, that those services were actually rendered and both Defendants benefitted, and Plaintiff reasonably expected to be paid for those services, but neither Defendant paid Plaintiff for the services.

[DE 56, p.3, n. 1 and p. 4].

Defendants take issue with the testimony Jacob Clabes provided on this subject at the July 5, 2016 damages hearing, which supports a finding of joint and several liability. [DE 67-1, p. 26]. If Defendants had appeared at the hearing, they could have cross-examined Mr. Clabes on this point; however, neither a representative on behalf of Four Tigers nor Defendant Short appeared at the hearing. The Court agrees with Plaintiff's Response to Defendants' motion on this point:

First, the marketing plan developed by
Plaintiff in May, 2012 was directed to "Paige
Shumate Short, The Real Blackberry Person."
(Trial Ex. 21). Four Tigers is not mentioned
whatsoever. Second, the marketing budget
memorandum sent by Plaintiff was directed to
Paige Short, not Four Tigers. (Trial Ex. 26).
That memo included work for both the Real
Blackberry People and Four Tigers. Again, the
common denominator in each marketing plan is
Ms. Short in her individual capacity.

Third, Plaintiff did marketing work for the
Real Blackberry People. (Trial Ex. 16 and 17).
Fourth, Plaintiff did graphic design work for
the Shumate Family Foundation (Trial Ex. 15).
If Plaintiff was working solely for Four
Tigers, why would Plaintiff do work for Ms.
Short's personal family foundation? The answer
is simple: Plaintiff was working for Ms.
Short. It was Ms. Short who made all the
decisions and it was Ms. Short who determined
the scope of work. As such, Ms. Short is
personally liable and cannot escape liability
by pointing her finger at Four Tigers.

[DE 69, p. 18-19].

### iv.   Attorney's fees and costs

Defendants argue that because, in their view, Plaintiff
should not have prevailed on the copyright claim, Plaintiff should
not be awarded costs and fees pursuant the copyright statute, 17
U.S.C. § 505. The Court has already addressed the appropriateness
of the liability and damages it imposed on the copyright
infringement claim in Section ii, above.

### IV.  Conclusion

For the reasons stated above, the Court finds there is no
justification for vacating, altering, amending, or adding to the

findings of the judgment, or for a new trial in this case pursuant to Rules 60(b)(1) or (6), 59(a) or (e), or 52(b).  The Court holds there was no excusable neglect or any other reason justifying post-judgment relief, and there were no clear errors of law requiring relief.

Accordingly, **IT IS ORDERED** that Defendants' Motion to Vacate Judgments and for New Trial, and Alternative Motion to Alter or Amend Judgments or Make Amended or Additional Findings, be, and the same hereby is, **DENIED**.

This the 17th day of January, 2017.

Signed By:

_**Joseph M. Hood**_

**Senior U.S. District Judge**